We will turn to the next case on the calendar, 19-2519, Quarshie v. Garland. Mr. Kucha? Good morning. Good morning, and I understand you would like to hold two minutes in rebuttal, is that right? That is correct. Good morning. You may proceed. May it please the court again, my name is Edward Kucha, and I do represent the petitioner, Rita Quarshie, in this matter. We contend that the competency hearing undertaken by the immigration judge in the removal proceedings of Ms. Quarshie was woefully insufficient, woefully deficient, and we contend that the matter must be remanded for a proper competency hearing. In this matter, it is very clear there was indicia of incompetency, as is clearly documented in the record. Both Ms. Quarshie's attorney, Ms. Lazar, noted that the petitioner had made outbursts in her office, there was other indicia of incompetency, and the attorney, I think, properly sentenced Ms. Quarshie to a psychologist, and a psychologist's report was prepared, and based on that indicia of incompetency, the immigration judge undertook what they call a MAM competency hearing, the MAM hearing, and that's where the matter seems to go off the rails. We contend that the MAM hearing undertaken by the immigration judge was just woefully incompetent. The questions are almost comical. The judge asks Ms. Quarshie, are you under any medication? And she says, she is. And then the judge asks, is there a way you can testify? She says, I will try. But he says, does that affect your ability to speak? And then Ms. Quarshie answers, it's very emotional. And then the judge says, well, it's emotional, but does the medication affect your ability to speak? And then she says, I will speak. And that's it. There's no further exploration of that issue. And then from there it gets even worse. At that point, then the immigration judge simply proceeds to ask purely and only leading questions. He asks, for example, this is a hearing for your asylum case. Yes, sir. Do you understand who that person is over there? Pointing to the immigration prosecutor. Rather than allowing Ms. Quarshie to answer, the judge tells her. She's the government's attorney. And you understand why I'm here today. Can I ask you about this? The purpose of the competency hearing is for the judge to elicit particular things to determine what the competency is, to determine that you have a knowing and voluntary situation where someone knows what they're getting into, right? Correct. Isn't that effectively, I mean, what happens, for example, in a criminal proceeding, you have a rule 11 canvas. Somebody's going to plead guilty. These questions are framed in exactly the same way. The judge explains something and says to the person, the defendant in that case, and do you understand what I'm saying? So what we hear in a plea canvas is yes, yes, yes, yes, yes. They're yes or no questions. And they're designed to inform the person who's there of what's going on and to ascertain whether they understand that. So I guess what I'm not sure is why the format of the question here is problematic, when it seemed to me that it was designed by the immigration judge to be very direct and very clear and try to get an answer. Now, I understand that you may say some of the answers, some of the responses were not clear. For example, you say, well, I'm emotional or something like that. And maybe there's room for debate over whether it was clear. But what I don't understand is defaulting the district or the immigration judge for the format of the questions. My answer to that would be that this was not necessarily questions designed to seek understanding of the proceedings, but to seek competency. And by having the respondent, Ms. Quarshie, simply answer yes or no or yes, her competency is not adequately explored. The judge should have said, who is this person sitting next to you? Who am I? To understand in a competency setting, if Ms. Quarshie could have said, you're my judge, rather than having the judge say, I'm your judge, do you understand that? Why? I mean, one of the main components of competency is an ability to understand the proceedings. So to the extent the judge has gone the route of explaining and then just asking if it's understood, rather than asking whether without any explanation the person knows the answers to certain questions, why does competency depend on the latter rather than the former? I would answer this way, Your Honor, that by asking a person in that sort of leading manner, the only answer would be yes. For the person to say no in that circumstance would be most unusual. Not necessarily. The person could say no, or the person could look befuddled. I mean, you know, I do have a background on the district court, and I've interacted with people who have not, their demeanor is made plain, they're not understanding what I've just explained to them. So I'm not sure that the only possible answer is yes. See, one of the problems with this record is we don't know about demeanor. There's no way to judge it simply from these answers. There's no way to really judge befuddlement. But usually we defer to the judicial officer who has seen a witness, a defendant, whatever. We rely on the person to assess demeanor. If there was some reason to think otherwise, that would have been made clearer on the record. That's where the totality of the record and the exchange then during the proceedings itself seems to support that she was understanding what was going on. Certainly no direct discussion of demeanor in that case was made. The befuddlement seems to have come beforehand when she said I'm emotional or I will speak, and she didn't really answer the judge's questions. The problem with that is that many people are emotional in judicial proceedings of any kind. That's different from competency.  And emotionality, of course, is expected and understood. But the emotionality does not proceed by a psychologist's report and by an attorney saying my client made these outbursts and was unresponsive and all the other things that the attorney had said. So, yes, clearly emotionality exists and is expected to exist. But that's not what the MAM hearing is about. It's more about competency. And our position simply is that this was not sufficient to judge competency. As a matter of law. Exactly. Exactly. And that is exactly my point. Thank you. Okay. You've reserved a couple minutes for rebuttal. I have. Thank you, Judge. We'll see you again. Let's see. We have Attorney Henley for the government. Good morning. And may it please the court, Madeleine Henley for the Attorney General. The record here establishes that the immigration judge's competency inquiry comported with MAM's guidelines. And that petitioner was competent to participate in her removal proceedings. Although she now complains about purported deficiencies in the competency inquiry, she's made no showing that absent those deficiencies, she would have demonstrated her lack of competence. No evidence compels the conclusion that she was incompetent. To the contrary, the entire record demonstrates that she understood the nature and purpose of her hearing and that she was responsive to questions. Therefore, even if the immigration judge's inquiry fell short, and it did not, any alleged error was necessarily harmless. MAM articulates a flexible framework, and it says that the approach taken in any particular case will vary based on the circumstances of the case. And I think that here, the record shows that petitioner had the inquiry that the circumstances of her case called for. There was one indicia of incompetence, and that was that on the day of the hearing, at the start of the testimony, petitioner's attorney announced that the week before, when preparing for the hearing, she had had an outburst and difficulty discussing her case, so they referred her to a psychologist who diagnosed her with PTSD. Because MAM says that a mental health diagnosis may be an indicia of incompetence, the immigration judge appropriately engaged in a competency inquiry at the start of the hearing to ascertain whether petitioner understood the nature and object of the proceedings. To the contrary, the record does contain demeanor findings. The immigration judge observed petitioner's demeanor. He noted she did not appear confused or unsure of her surroundings, that she appeared able to focus on and understand the questions, that she didn't hesitate in giving her responses, that she spoke up so as to be heard by all the participants, both during the inquiry and during the entire proceedings. She readily stated her name, provided her address, explained she traveled to the hearing by train, had no difficulty getting there, and those were not leading questions. And there are petitioners who come to court and are unable, I believe the petitioner in MAM could not state his name for the record. As far as the medication, MAM says that you should ask about whether the non-citizen is taking any mental health medication. And when the immigration judge inquired whether she was on any medication, she did not claim to be taking any mental health medication. She mentioned only medication about blood pressure. Still, the immigration judge asked her if it affected her ability to discuss her past. And I think it's important how he asked that question. He said, not does it affect your ability to testify. He said, does it affect your ability to discuss your past? And it seems you can read the record of her response. It's very emotional to be how she feels discussing her past, which is also what her attorney said. It was hard when she discussed her past. And at points throughout the hearing, she says it's hard for me to talk about this. She's emotional, but emotional is not incompetent. The immigration judge also confirmed in a non-leading question that she had assisted her counsel in preparing her case. And the record shows she prepared a personal statement. So as far as the charge that the questions were woefully inadequate, MAM does not require a specific form of question. And we're now looking at this record in hindsight, but it's important to think of how it would have appeared to the immigration judge as it unfolded. He had seen the petitioner before. Other than this report of a PTSD diagnosis, which he credited for the purpose of the inquiry, there was no hint from her behavior or from her early responses to his non-leading questions that she was failing to understand or follow. As to the question about opposing, that she didn't understand, that I think my adversary said that while the immigration judge supplied the answer as to who is the government's attorney, reading both that question and the immigration judge's decision, it seemed that what happened there is she initially indicated she didn't recognize who that person was. And so he says, no, not who she is, but what she represents. Okay, she's the government's attorney. And in his decision, the immigration judge wrote, although initially she was unable to identify who that person was, when it was explained she understood and she definitely recognized her own attorney's role in the case. So if she had appeared unfocused, if she had been looking around the room and unable to make eye contact, if her attorney had said, Your Honor, we were not able to prepare her, she cannot tell her story, I can't keep her on track, she's not focused, the immigration judge might have engaged in a more searching inquiry. Similarly, had she said when he said, do you understand we're here for your asylum case, if she had said no, he likely would have engaged in a more searching inquiry. But the entire record here demonstrates, as he found, that she knew the participants and she understood why she was there. As far as the psychologist report, that didn't come up just now, but in his brief it was the third of the three deficiencies that Petitioner identified, was that the immigration judge did not admit the report as evidence of incompetence. And MAM did not require that the immigration judge accept that report. It was not offered to demonstrate incompetence. Petitioner's attorney expressly told the immigration judge it was offered for withholding the merits only, which are not challenged in this appeal. The psychologist did not evaluate Petitioner's competence to participate, and the report does not remotely suggest that she was incompetent. In fact, the report says she was, quote, oriented to time, place, and person. So the immigration judge did not need to admit the report with respect to the issue of competency. So on this record, it seemed clear that the immigration judge's inquiry was appropriate, and he reasonably concluded that Petitioner had demonstrated competence, which is a rational and factual understanding of the nature and object of proceedings. She could consult with her attorney, and she had a reasonable opportunity to present evidence in her case. Even if imperfect for the reasons Petitioner claims, she's identified and can identify no prejudice from the alleged deficiencies. She's made no showing that if only non-leading questions were asked, if she had clarified her response about the blood pressure medication and said, I'm emotional, but I can speak, is what she said, if she had said, no, my blood pressure medication does not hinder my ability to testify, which in any event is obvious from the way she testified. And if the report had been admitted, then she would have shown she was incompetent. She doesn't claim that she was incompetent. Moreover, had she been deemed incompetent, it's not like the hearing would have been over. She would have been entitled to safeguards, and the main safeguard typically afforded in the circumstances of a non-citizen deemed incompetent is an attorney, which she had. And she's identified no safeguards that she claims were needed, but she was not provided. And because she doesn't challenge the competency determination itself, that is, she points to no evidence compelling the conclusion that she was incompetent, then even if the immigration judge didn't ask the best questions, it can't have made a difference. Finally, because she waived any challenge to the merits determination, she can't establish that the competence inquiry had any bearing on the merits. So if the Court has no questions, I'll just briefly conclude to say that the sole relief that Petitioner seeks from this Court is a remand for a more fulsome competency hearing under MAM, but has advanced no argument and identified no evidence that had a more fulsome hearing been held, she would have demonstrated her lack of competence. Because no record evidence compels the conclusion that she was incompetent to participate in her proceedings, the Court should decline to disturb the agency's determination and deny the petition for review. Thank you. Thank you very much. Mr. Kucha, you've reserved two minutes for rebuttal. I have, and thank you. Let me speak for a moment about prejudice. Clearly, Ms. Quarshi was prejudiced here. Had a proper competency hearing been held, the judge might well have found her to be incompetent. Yes, she had an attorney, but additional safeguards could have been put in place. A psychologist could have been required to come to the Court to be present in Court to be sure that her mental stability was okay. The matter could have continued. There could have been additional inquiries into her competence. There could have been additional evaluations into her competence. This is not the way a person with indicia of incompetence should be treated in the immigration court system. And I think, Judge, I can leave it at that. Thank you, Your Honors, and thank you. Thank you very much to both of you. Thank you. We will take the case under advisement. As I said at the outset, but I'll repeat, we have one further case in the calendar, 21-1602, Dale v. Rozinski. We will also take that under advisement, and let me just make sure. I believe that we also have some motions on the calendar for today, and we will also reserve decision on those. With that, I will thank the Courtroom Deputy, and we will stand adjourned.